*Decision will be entered under Rule 155.*

JAMES D. COLBERT AND FRANCES J. COLBERT, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5039–71. Filed January 15, 1974.

*Daniel J. Clinton*, for the petitioners.
*Jonathan A. Brod*, for the respondent.

STERRETT, *Judge:* The respondent determined the following deficiencies in the Federal income tax of the petitioners:

| Year | Deficiency |
|------|-----------|
| 1967 | $469. 68 |
| 1968 | 643. 16 |
| 1969 | 634. 37 |

The only issue for decision is whether, during the years in issue, the petitioner James D. Colbert, an ordained Baptist minister employed by the Christian Anti-Communism Crusade, was a minister of the gospel entitled to exclude amounts received as a rental allowance from his gross income as provided by section 107(2).[1] For each of the years in issue, the allowable medical deduction will be controlled by the adjusted gross income, which in turn depends on the decision reached herein.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference.

James D. Colbert and Frances J. Colbert are husband and wife who, at the time of the filing of the petition herein, maintained their legal residence in Long Beach, Calif. They filed their joint Federal income tax returns for the calendar years 1967, 1968, and 1969 with the district director of internal revenue at Los Angeles, Calif. Frances J. Colbert is a party to this action solely by virtue of having filed a joint return and, consequently, James D. Colbert will hereinafter be referred to as the petitioner.

The petitioner is an ordained Baptist minister. Following his ordination, petitioner was the executive director of the Youth for Christ in Riverside and San Bernardino counties in 1946. During 1947 and 1948, he was the pastor of the Pedley Community Church in Riverside, Calif. For the next 4 to 5 years he was executive director of the Youth for Christ in Long Beach, Calif.

In 1953 the petitioner joined the Christian Anti-Communism Crusade (hereinafter referred to as the Crusade) on a part-time basis as director of missions. Commencing in 1956, petitioner was employed on a full-time basis by the Crusade as director of missions and, starting in 1968, as chairman of the board, positions which he still holds. The petitioner at one time belonged to a Baptist convention, the Bible Baptist Fellowship, but no longer is associated with that, or any other, convention.

---

[1] All Code references herein are to the Internal Revenue Code of 1954, as amended and as applicable to the taxable year involved, unless otherwise indicated.

The Crusade, incorporated in 1953, is an organization formed to combat communism. Its charter and bylaws both state its purpose and object as follows:

To combat communism by means of lectures in schools, colleges, civic clubs, servicemen's organizations and other similar organizations and through radio and television broadcasts and by providing courses for missionaries and others to be used in Bible schools and seminaries, and the holding of religious and evangelistic services in churches, and through the publication of books, pamphlets and other literature and by all other appropriate means.

In its brochure entitled "What is the Christian Anti-Communism Crusade?", the purpose of the Crusade is further expounded upon as follows:

To instruct citizens in the philosophy, morality, organization, deceitful techniques and objectives of Communism. To encourage citizens to begin a continued program of study and applied citizenship to transfer acquired knowledge into local, national and international programs which will be effective in the maintenance of freedom. To propagate the Christian Faith.

The Crusade's objective of combating communism is carried out through a program of instruction which involves lectures at colleges, universities, and churches, local study groups, an overseas program, the providing of films, tapes, and literature, and schools of anti-communism. The program for churches is based upon the premise that churches have "an inescapable responsibility to expose the errors and deceitful methods of Communism." The Crusade aids churches in meeting this "responsibility" in the following ways: (1) Providing speakers for church services and meetings; (2) cooperating in the formation and conduct of study groups; (3) informing preachers and church leaders of current emphasis in communist doctrine and strategy; (4) providing films, tape recordings, records, and literature for church use.

Through its overseas or international program, the Crusade seeks to inform the people of each country about the true nature and deceptive practices of communism while the people still have a choice to resist the Communist movement or takeover. In its schools of anti-communism, the Crusade teaches those people who are concerned about the Communist danger how to equip themselves to fight it by understanding the doctrines and programs of communism.

During the years in issue, the petitioner was principally involved with the church program, the overseas program, and the schools of anticommunism. The petitioner spoke in churches on an average of 100 to 150 times per year. The major thrust of these speeches was to inform people of the danger that communism imposes upon the world and the Christian church because of its restriction of liberties and to challenge them to keep the neutral countries free. In addition to his speeches at churches, the petitioner also substituted for ministers or aided in ad-

ministering Communion. However, these services were not duties required by or resulting from his employment by the Crusade. The petitioner also spoke to youth groups, men's and women's groups, civic clubs, and educational bodies as part of his employment with the Crusade.

In the overseas program, as director of missions, the petitioner was responsible for informing people of the neutral countries of the Communist peril and directing native workers in this respect. In 1961 the petitioner made a tape recording entitled "Communism in Asia" which was placed on the Crusade's list of tapes available to the public. As chairman of the board, the petitioner's main duty was to preside over the Crusade's annual meetings.

In 1956 the Crusade received from the respondent an exemption from Federal income taxes as an organization organized and operated exclusively for religious and educational purposes under section 501 (c) (3). This exemption has not been revoked.

The Crusade is not a church or religious organization nor is it affiliated with, or subservient to, any church group or denomination. It does not conduct regular church services and is totally independent in its activities.

The Crusade did not employ petitioner for the ministration of sacerdotal functions such as administering the rites of baptism and the Lord's Supper. The petitioner's services rendered to the Crusade were not performed pursuant to an assignment or designation by the Baptist church.

Baptist churches are completely autonomous and do not answer to any hierarchical authority. Often they associate with national conventions but such association is purely voluntary. The conventions exercise no dominion or control over its member churches. Generally, the governing unit of a Baptist church is the congregation itself.

According to general practice in Baptist churches, the Baptist church has two "ordinances" which are baptism and the Lord's Supper. These "ordinances" closely resemble sacraments administered in other faiths. The pastor or reverend of a Baptist church is an ordained minister of the gospel and his principal role, according to practice and Baptist theology, is to preach at the worship service. The Baptist minister preaches the gospel of Jesus Christ, the teaching of principles laid down by Christ. Although there are no formal or binding pronouncements, support of the foreign missions is one of the tenets of the Baptist faith. However, the preaching of anticommunism is not a tenet or practice of the Baptist faith.

In 1967 and 1968, in addition to his salary, the petitioner received a rental allowance of $200 and $250 per month, respectively, from the Crusade as compensation for his services. In 1969 the petitioner re-

ceived a rental allowance of $300 per month through September, after which time the allowance was included in his regular salary and was reported on his return. The petitioner treated these rental allowances in the amounts of $2,400, $3,000, and $2,700 received during 1967, 1968, and through September of 1969, respectively, as a parsonage allowance within the meaning of section 107 and excluded these amounts from his Federal income tax returns in each of those years. The petitioner actually expended the above amounts to provide housing for his family and himself.

In his notice of deficiency, the respondent disallowed the parsonage allowance exclusions claimed in each year by the petitioner and also decreased the medical deductions allowable since adjusted gross income was thereby increased.

OPINION

The sole issue for decision is whether the petitioner was entitled during the years in issue to an exclusion from gross income under section 107 for amounts received as a rental allowance.

During the years in issue, the petitioner, an ordained Baptist minister, was employed by the Christian Anti-Communism Crusade as its director of missions and, starting in 1968, as chairman of the board. As partial compensation for his services, the petitioner received a rental allowance from the Crusade. It is the petitioner's contention that in each of the years in issue he is entitled to exclude these rental allowances from gross income on authority of section 107.

Section 107 [2] provides as follows:

SEC. 107. RENTAL VALUE OF PARSONAGES.

In the case of a minister of the gospel, gross income does not include—

(1) the rental value of a home furnished to him as part of his compensation; or

(2) the rental allowance paid to him as part of his compensation, to the extent used by him to rent or provide a home.

Section 1.107–1(a), Income Tax Regs., provides, in pertinent part, as follows:

(a) In the case of a minister of the gospel, gross income does not include (1) the rental value of a home, including utilities, furnished to him as a part of his compensation, or (2) the rental allowance paid to him as part of his compensation to the extent such allowance is used by him to rent or otherwise provide a home. In order to qualify for the exclusion, the home or rental allowance must be provided as remuneration for services which are ordinarily the duties of a minister of the gospel. In general, the rules provided in § 1.1402(c)–5 will be applicable to such determination. Examples of specific services the performance

_____

[2] We note here that the respondent stipulated that the petitioner was a "minister of the gospel." We assume that the respondent meant by this only that the petitioner was an ordained minister, and not that the petitioner qualified for the deduction since the respondent's argument is that the petitioner is not employed as a "minister of the gospel" by the Crusade. Cf. *Marc H. Tanenbaum*, 58 T.C. 1 (1972).

of which will be considered duties of a minister for purposes of section 107 include the performance of sacerdotal functions, the conduct of religious worship, the administration and maintenance of religious organizations and their integral agencies, and the performance of teaching and administrative duties at theological seminaries. * * *

Thus, the rental allowance must be paid as compensation for certain qualifying services. Section 1.1402(c)–5(b)(2), Income Tax Regs., sets forth several tests to be used in determining the services of a minister that qualify for the exclusion, of which the following test stated in section 1.1402(c)–5(b)(2)(iii), Income Tax Regs., is the only one relevant in the instant case:

(iii) If a minister is performing service *in the conduct of religious worship* * * * such service is in the exercise of his ministry whether or not it is performed for a religious organization. [Emphasis supplied.]

Section 1.1402(c)–5(b)(2)(i), Income Tax Regs., provides further that the tenets and practices of the particular religious body constituting the minister's church or church denomination control in determining whether service performed by a minister constitutes the conduct of religious worship.

Under section 7805(a), the respondent is given authority to prescribe all needful rules and regulations for enforcement of the Internal Revenue Code. These regulations, unless unreasonable or plainly inconsistent with the revenue statute to which they relate, must be sustained and have the force and effect of law. *Commissioner* v. *South Texas Co.*, 333 U.S. 496, 501 (1948); *Maryland Casualty Co.* v. *United States*, 251 U.S. 342, 349 (1920). We do not find the regulations promulgated for section 107 to be unreasonable or inconsistent with the statute, and therefore hold them to be valid.

The respondent contends that the petitioner is not entitled to exclude any part of his compensation because the duties required by his employment with the Crusade did not consist of services ordinarily performed by a minister in the exercise of his ministry as defined in sections 1.107–1(a) and 1.1402(c)–5, Income Tax Regs. The respondent concedes that petitioner was, and is, an ordained minister. Cf. *Abraham A. Salkov*, 46 T.C. 190 (1966); *David Silverman*, 57 T.C. 727 (1972), affd. (C.A. 8, 1973). The respondent further concedes that the Crusade designated the amounts received by the petitioner as rental allowances and that he used them to provide housing for his family and himself. Cf. *Fred B. Marine*, 47 T.C. 609 (1967); *Richard R. Eden*, 41 T.C. 605 (1964):

As the petitioner has stipulated that his services rendered to the Crusade were not performed pursuant to an assignment by the Baptist Church, that the Crusade was not a religious organization, and that the Crusade did not employ the petitioner for the ministration of

sacerdotal functions, the respondent's narrow contention here is that the services rendered by the petitioner to the Crusade were not the conduct of religious worship within the intendment of section 107. The burden of proving the respondent is in error is upon the petitioner. Rule 142, Tax Court Rules of Practice and Procedure.

As a judicial body, we are loathe to evaluate and judge ecclesiastical authority and duties in the various religious disciplines. In the instant case, we have no doubt that the petitioner was sincere in his belief that his activities and services performed for the Crusade were those of a minister of the Baptist faith. However, we must judge from the record before us whether the duties required by the petitioner's employment with the Crusade were the functions of a minister within the meaning of the statute.

The petitioner first argues that the Baptist faith has no pronounced tenets and practices which are binding on its churches and that consequently each church, and ultimately each individual, is responsible for the control and conduct of its religious worship. While we agree with the petitioner, from our understanding of the Baptist hierarchy, that there is no formal statement of precepts which are binding on the Baptist churches, we nevertheless believe that the term "tenets and practices" as used in the aforementioned regulations includes those principles which are generally accepted as beliefs and practices within the Baptist denomination. The petitioner would have us substitute a subjective test based on the individual beliefs of each listener to determine whether or not a minister was conducting religious worship. This we decline to do.

Thus, we must determine whether the petitioner's speeches and activities were the conduct of religious worship. The legislative history of section 107 is meager and uninstructive in this regard.[3] We first note here that the fact that a man is an ordained minister does not necessarily mean that he is in the active practice of his ministry. Cf. *Marc H. Tanenbaum*, 58 T.C. 1 (1972). Furthermore, the fact that he speaks in churches or to church groups also does not require the conclusion that he is a minister of the gospel since laymen also can be, and are, guest speakers during church services.

---

[3] Par. (1) of sec. 107 originated in the Revenue Act of 1921 without any explanation of the phrase "minister of the gospel." See sec. 213(b)(11) of the Revenue Act of 1921, 42 Stat. 239. Par. (2) of sec. 107 was added in the Internal Revenue Code of 1954 to clarify the discrepancy between rental allowances paid by congregations and residences actually furnished them. H. Rept. No. 1337, to accompany H.R. 8300 (Pub. L. No. 591), 83d Cong., 2d Sess., p. 15 (1954) ; S. Rept. No. 1622, to accompany H.R. 8300 (Pub. L. No. 591) 83d Cong., 2d Sess., p. 16 (1954). Except for a brief and uninformative discussion during hearings on the Revenue Act of 1934, no reference or explanation has been made with regard to the phrase. See Confidential Hearings of the Senate Finance Committee on the Revenue Act of 1934, pp. 30–31.

We have found as a fact that the support of foreign missions comes within the concept of the tenets and practices of the Baptist faith, but that the preaching of anticommunism does not. We fully accept the petitioner's thesis that communism is a godless force and that it is, in its purist form, necessarily incompatible with Christianity. However, this proposition is not the basis upon which to equate the preaching of anticommunism with the conduct of religious worship. We must emphasize here that the findings of fact and opinion are based on the evidence and proof presented in each case. In the instant case there was competing testimony as to whether the petitioner's speeches and activities were the conduct of religious worship within the Baptist faith. In support of his position that the petitioner was not conducting religious worship, the respondent presented several witnesses who represented a broad spectrum of the Baptist faith, ranging from a Baptist minister to a professor of theology at a Baptist seminary. The petitioner offered three ministers as witnesses on his behalf, two of whom were not ordained Baptist ministers, but who were ordained in other religious denominations.

After considering the record in the instant case, we conclude that the petitioner's speeches and activities for which he was compensated by the Crusade were not the conduct of religious worship. The petitioner's speeches were not religious instruction in the principles laid down by Christ or in a person's way to find Christ. They did in some ways express a legitimate concern of the Baptist church in that they discussed the plight of the missionaries in the conversion to Christianity of people in the neutral or Communist countries. However, we are convinced that the support of the foreign missions was not the main thrust of the petitioner's services performed for the Crusade. The petitioner's primary emphasis in this regard was in warning and awakening people to the dangers of communism and in educating them as to the principles of communism. The petitioner's discussion of the plight of the missionaries was secondary and used only as an introduction to the real message of his speeches.

While we realize that the Crusade was classified as a "religious and educational organization" in its grant of tax exemption by the respondent, we find this in no way conclusive in our determination of the nature of the petitioner's services. In fact, the parties stipulated in the instant case that the Crusade was not a religious organization. We believe that the petitioner's activities on behalf of the Crusade were educational rather than religious.

As we have found that the petitioner's services rendered on account of his employment with the Crusade fundamentally consisted of the preaching of anticommunism, which is not a tenet or practice of the Baptist faith, we conclude that the petitioner was not conducting religious worship so as to be in the exercise of the ministry within the

intendment of section 107. Accordingly, the petitioner is not entitled to exclude the rental allowances received from the Crusade.

*Decision will be entered for the respondent.*

