JESSE A. TOAVS AND JANICE E. TOAVS, ET AL.,[1] PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 700–74, 2522–74, 2523–74, 2524–74, 2525–74, 2667–74, 2669–74, 3481–74, 3513–74.

Filed March 7, 1977.

*Bert Nygaard,* for the petitioners.
*David J. Duez,* for the respondent.

OPINION

TIETJENS, *Judge:* Respondent determined the following deficiencies in petitioners' Federal income tax for the years 1970, 1971, and 1972:

| | Deficiencies | | |
|---|---|---|---|
| Petitioners | 1970 | 1971 | 1972 |
| Jesse A. Toavs and Janice E. Toavs...... | — | — | $819.71 |
| G. E. Doughty and Ruth Doughty......... | — | $584.44 | 682.98 |
| Ivan Kramer and Beatrice Kramer...... | $1,046.37 | 1,165.69 | 1,011.94 |
| Ernest R. Swanson and Mary Ann Swanson............... | — | 565.26 | 593.63 |
| Harvey Junker and Beverly Junker..... | — | 725.24 | 878.60 |
| Ivan V. Hagar and Ozella D. Hagar..... | — | 431.12 | 628.28 |

[1] Cases of the following petitioners are consolidated herewith: G. E. Doughty and Ruth Doughty, docket No. 2522–74; Ivan Kramer and Beatrice Kramer, docket No. 2523–74; Ernest R. Swanson and Mary Ann Swanson, docket No. 2524–74; Harvey Junker and Beverly Junker, docket No. 2525–74; Ivan V. Hagar and Ozella D. Hagar, docket No. 2667–74; James L. Larson and Eva L. Larson, docket No. 2669–74; James F. Wolf and Dawn Wolf, docket No. 3481–74; and Calvin R. Gruetzmacher and Maxine L. Gruetzmacher, docket No. 3513–74.

| | | | |
|---|---|---|---|
| James L. Larson | — | 505.00 | — |
| James L. Larson and Eva L. Larson | — | — | 509.01 |
| James F. Wolf and Dawn Wolf | — | 698.78 | 613.89 |
| Calvin R. Gruetzmacher and Maxine L. Gruetzmacher | — | 488.51 | 505.85 |

The issue remaining for our determination is whether certain payments made to petitioners by Challenge Homes, Inc., are excludable from gross income under section 107[2] as parsonage allowances.

All of the facts having been stipulated; they and the exhibits attached thereto are incorporated herein by this reference.

Petitioners Jesse A. Toavs and Janice E. Toavs, husband and wife, lived in Alexandria, Minn., at the time they filed their petition. Petitioners filed a joint Federal income tax return for the year 1972 with the Internal Revenue Service Center in Ogden, Utah.

Petitioners G. E. Doughty and Ruth Doughty, husband and wife, resided in Glenwood, Minn., on the date they filed their petition. Petitioners filed joint Federal income tax returns for the years 1971 and 1972 with the Internal Revenue Service Center in Ogden, Utah.

Petitioners Ivan Kramer and Beatrice Kramer, husband and wife, lived in Barnesville, Minn., on the date they filed their petition. Petitioners filed joint Federal income tax returns for the years 1970, 1971, and 1972 with the Internal Revenue Service Center in Ogden, Utah.

Petitioners Ernest R. Swanson and Mary Ann Swanson, husband and wife, resided in Sioux Falls, S.Dak., on the date they filed their petition. Petitioners filed joint Federal income tax returns for the years 1971 and 1972 with the Internal Revenue Service Center in Ogden, Utah.

Petitioners Harvey Junker and Beverly Junker, husband and wife, lived in Glenwood, Minn., on the date they filed their petition. Petitioners filed joint Federal income tax returns for the years 1971 and 1972 with the Internal Revenue Service Center in Ogden, Utah.

Petitioners Ivan V. Hagar and Ozella D. Hagar, husband and wife, resided in Crosbyton, Tex., on the date they filed

---

[2] All statutory references are to the Internal Revenue Code of 1954, unless otherwise stated.

their petition. Petitioners filed joint Federal income tax returns for the years 1971 and 1972 with the Internal Revenue Service Center in Austin, Tex.

Petitioners James L. Larson and Eva L. Larson, husband and wife, lived in Irving, Tex., on the date they filed their petition. Petitioner husband filed a Federal income tax return for the year 1971 with the Internal Revenue Service Center in Austin, Tex. Petitioners filed a joint Federal income tax return for the year 1972 with the Internal Revenue Service Center in Austin, Tex.

Petitioners James F. Wolf and Dawn Wolf, husband and wife, resided in St. Peter, Minn., on the date they filed their petition. Petitioners filed joint Federal income tax returns for the years 1971 and 1972 with the Internal Revenue Service Center in Ogden, Utah.

Petitioners Calvin R. Gruetzmacher and Maxine L. Gruetzmacher, husband and wife, lived in Mobridge, S. Dak., on the date they filed their petition. Petitioners filed joint Federal income tax returns for the years 1971 and 1972 with the Internal Revenue Service Center in Ogden, Utah.

Jesse A. Toavs, G. E. Doughty, Ivan Kramer, Ernest R. Swanson, Harvey Junker, Ivan V. Hagar, James L. Larson, James F. Wolf, and Calvin R. Gruetzmacher (hereinafter referred to as petitioners) are ordained ministers and at all times relevant were employees of Challenge Homes, Inc. (hereinafter referred to as Challenge). During the years in controversy they excluded, as parsonage allowances, the following payments received from Challenge in determining their income subject to Federal income taxation in the following amounts:

| Name | 1970 | 1971 | 1972 |
|---|---|---|---|
| Jesse A. Toavs | — | — | $5,136.00 |
| G. E. Doughty | — | $2,540.00 | 3,070.00 |
| Ivan Kramer | $2,542.99 | 2,542.99 | 2,542.99 |
| Ernest R. Swanson. | — | 3,070.00 | 3,240.00 |
| Harvey Junker | — | 3,766.00 | 4,140.00 |
| Ivan V. Hagar | — | 2,399.00 | 3,319.67 |
| James L. Larson | — | 2,640.00 | 2,491.67 |
| James F. Wolf | — | 3,294.00 | 3,369.28 |
| Calvin R. Gruetzmacher | — | 3,022.00 | 3,092.00 |

Respondent determined that the amounts did not qualify as parsonage allowances and disallowed the exclusions.

The amounts were the actual cost of housing for each petitioner. Prior to the payment of the allowances Challenge authorized them and identified them as parsonage allowances.

Challenge, a nonprofit charitable corporation operating under the provisions of section 501(c)(3), has received an exemption letter from respondent classifying it as not a profit corporation. Its primary undertaking during the period in controversy was the operation and management of various nursing homes located throughout the United States. Challenge owned or leased the homes, or provided management services for them. Approximately 70 percent of the residents of its nursing homes were indigents or public welfare recipients.

In April of 1961, prior to the incorporation of Challenge, Rev. L. D. Kramer requested and obtained the approval of the Assemblies of God Church to have a committee undertake the study and development of a corporation which would provide nursing home services for the elderly. Six months later, upon the recommendation of the committee, two of the seven men appointed by the district presbyters to that committee and the secretary-treasurer of the Minnesota District Council of the Assemblies of God Church incorporated Challenge. The incorporators were L. D. Kramer, Ivan Kramer, and Herman H. Rohde.

Challenge was originally incorporated as Assembly Homes, Inc., and changed its name on February 18, 1969, to avoid confusion with another corporation operating nursing homes.

During the period in issue, each petitioner held the following job or jobs with Challenge:

| Petitioner | Job title |
| --- | --- |
| Jesse A. Toavs | Director of development |
| G. E. Doughty | Executive director |
| Ivan Kramer | Vice-president of finance |
| | Administrator-Chaplain of an individual nursing home |
| Ernest R. Swanson | Director of the northern region |
| Harvey Junker | Director of purchasing |
| Ivan V. Hagar | Administrator-chaplain of an individual nursing home |

James L. Larson .........................................Administrator-chaplain of an
individual nursing home

James F. Wolf............................................Administrator-chaplain of an
individual nursing home

Calvin R. Gruetzmacher ..........................Administrator-chaplain of an
individual nursing home

Even though petitioners are ordained ministers, Challenge does not require administrators of individual nursing homes to be ministers as a condition of employment. However, it prefers ordination if available. As for its nursing home occupants, Challenge represents itself as a nursing home for persons of any race, denomination, creed, or color, and makes conscientious efforts to provide services for all creeds through ministers of those creeds.

The corporate charter and bylaws of Challenge do not require affiliation by members or directors with the Assemblies of God Church; nonetheless, all but one of its members and directors are ministers of the Assemblies of God. The charter of Challenge specifically states:

> This corporation is affiliated in spirit and charity with the Minnesota District Council of the Assemblies of God, a religious non-profit, Minnesota Corporation, and recognizes and respects the guiding principles set forth in its Articles of Faith. This Corporation is not, however, a subsidiary of the Minnesota District Council of the Assemblies of God nor is there any legal relationship between the corporations.

The Assemblies of God Church has never required Challenge to make policy, personnel, or administrative changes in its operations; nonetheless, the Reverend L. D. Kramer, president of Challenge, maintains that he is operating under the unwritten moral discipline and guidance of the Assemblies of God Church.

The Assemblies of God Church recognizes Challenge as operating under its "fellowship." To achieve and maintain this recognition, it requires Challenge to operate within the following criteria:

> 1. There shall be a working harmony of doctrine and practice with all corporations associated with the Assemblies of God as defined by these Criteria, in accordance with the parenthetical statement of Article VIII, Section 11, of the General Council Bylaws:

"This is not to be interpreted to mean that a limitation may be imposed upon any Assemblies of God minister regarding his Pentacostal witness or participation on a local level with interdenominational activities."

2. The purposes of the corporation shall be compatible with the purposes of the Assemblies of God in the announced area that the corporation is intended to serve. * * *

3. The use of all resources which include facilities, monies, equipment, et cetera, shall be in keeping with the stated purposes and objectives of said corporation. In the event that administrative costs shall exceed fifteen percent of the gross income, upon request of the Executive Presbytery, the Board of Directors shall make all records available for review and recommendation.

4. The corporation shall be a non-profit, non-private, open corporation, and the governing board shall not be self-perpetuating. * * *

5. All fiscal operations shall be under board control, with budget and cash control by a Board of Directors of no less than seven members. All records of fiscal affairs shall be available for examination at all times.

6. There shall be an annual audit by certified public accountants who shall audit the budget as well as cash control, and such audit report shall be made available to the Executive Presbytery when requested.

7. The leadership shall be of reputable character at local, national and international levels.

8. Accurate and ethical standards of communication shall prevail. All publications shall be discreet; literature shall be of positive character; and solicitations and mailing lists shall be used according to generally accepted high ethical standards.

9. Initiative to establish a working agreement with any corporation may be exercised by the Executive Presbytery or the corporation.

10. Each approved corporation shall be subject to annual review and approval by the Executive Presbytery who shall in turn report to the General Presbytery. Relationships between the corporation and the Assemblies of God shall be on the basis of continued cooperation in accord with the original purposes, objectives and operation of the corporation.

Challenge annually furnishes financial reports of its operations to the Assemblies of God Church even though there are no legal requirements that it do so. It also has made contributions to the Assemblies of God Church. In the years listed it gave the following amounts:

| Year | Amount |
|------|--------|
| 1970 | $2,160 |
| 1971 | 2,160 |
| 1972 | 9,160 |

The Assemblies of God Church does not contribute to the support of Challenge, but all directors of Challenge have been

ministers or members of the Assemblies of God Church and none have received compensation for their services as directors.

The Assemblies of God Church is a contingent remainderman to the assets of Challenge as provided by article IX of the articles of incorporation. Prior to. amendment of the articles of incorporation in July 1970, the Minnesota District Council of the Assemblies of God Church was the remainderman in the event of the dissolution of Challenge.

Section 107 provides that in the case of a "minister of the gospel" gross income does not include a parsonage allowance paid to him as part of his compensation. Section 1.107–1(a) of the regulations states that the allowance must be provided as remuneration for services which are ordinarily the duties of a minister and that the rules listed in section 1.1402(c)–5 of the regulations are applicable in making such a determination.

Section 1.1402(c)–5(b)(2) lists the kinds of services a minister performs in the exercise of his ministry and then suggests possible rules to apply when determining whether particular services meet the criteria of the regulations. The kinds of services a minister performs in the exercise of his ministry are "the ministration of sacerdotal functions and the conduct of religious worship, and the control, conduct, and maintenance of religious organizations [which are] * * * under the authority of a religious body constituting a church or church denomination."

This Court has determined that sections 1.107–1(a) and 1.1402(c)–5 of the regulations provide reasonable interpretations of section 107. *James D. Colbert,* 61 T.C. 449 (1974); *Marc H. Tanenbaum,* 58 T.C. 1 (1972). Therefore, we will follow their guidelines in analyzing petitioners' situation.

Section 1.1402(c)–5(b)(2) provides three applicable tests for the fact situation which confronts us. Petitioners must meet one before their rental allowance can be considered remuneration for services which are ordinarily the duties of a minister of the gospel.

1. Whether service performed by a minister constitutes the conduct of religious worship or the ministration of sacerdotal functions depends on the tenets and practices of the particular religious body constituting his church or church denomination. [Sec. 1.1402(c)–5(b)(2)(i), Income Tax Regs.]

We apply this test because the petition filed in each case suggests that a substantial portion of petitioners' duties with Challenge consisted of the performance of sacerdotal functions and the conduct of religious worship. The record, however, does not contain any evidence to establish what, if any, sacerdotal functions or religious worship services petitioners conducted pursuant to their employment with Challenge. Nor, and more importantly for this test, is there any evidence that the duties which petitioners did perform for Challenge constitute the conduct of religious worship or ministration of sacerdotal functions within the stated tenets and practices of the Assemblies of God Church.

2. If a minister, pursuant to an assignment or designation by a religious body constituting his church, performs service for an organization which is neither a religious organization nor operated as an integral agency of a religious organization, all service performed by him, even though such service may not involve the conduct of religious worship or the ministration of sacerdotal functions, is in the exercise of his ministry. * * * [Sec. 1.1402(c)–5(b)(2)(v), Income Tax Regs.]

None of the petitions filed in these cases allege that Challenge employed petitioners pursuant to an assignment or designation by their church denomination. Furthermore, the records in these proceedings do not contain any evidence of any such assignments or designations.

3. Service performed by a minister in the control, conduct, and maintenance of a religious organization relates to directing, managing, or promoting the activities of such organization. Any religious organization is deemed to be under the authority of a religious body constituting a church or church denomination if it is organized and dedicated to carrying out the tenets and principles of a faith in accordance with either the requirements or sanctions governing the creation of institutions of the faith. * * * [Sec. 1.1402(c)–5(b)(2)(ii), Income Tax Regs.]

If petitioners are to prevail under this test it is incumbent upon them to establish that Challenge was an integral agency of a church during the years in controversy.

The portion of the regulation cited above defines an integral agency as an organization which operates under the authority of a church denomination. Whether a particular organization is operating under the authority or control of a church denomination or is an independent institution can only be determined after reviewing all the facts and circumstances surrounding the relationship between the church denomina-

tion and the organization. See Rev. Rul. 72–606, 1972–2 C.B. 78.

The primary undertaking of Challenge was the operation and management of various nursing homes located throughout the United States. The idea for and the driving force behind Challenge was the Reverend L. D.. Kramer. Reverend Kramer requested and obtained a resolution of the Assemblies of God Church presbyters for the district of Minnesota approving the concept of developing a corporation to provide nursing home services to the elderly. The Assemblies of God Church became a contingent remainderman to the assets of Challenge, and the Minnesota District Council of the Assemblies of God Church recognized Challenge as operating within the fellowship of the Asemblies of God Church.

The requirements for recognizing Challenge as operating withir the fellowship of the church are very general. Furthermore, the record does not establish that loss of this recognition would impair Challenge's ability to carry out its primary purpose. To the contrary, the record establishes that Challenge was operating as a nondenominational nursing home and that the Assemblies of God Church did not provide financial support to Challenge.

The record also establishes that while all but one of the members and directors of Challenge are or have been ministers of the Assemblies of God Church, neither the bylaws nor the corporate charter of Challenge require members or directors to be affiliated with the church. Further, Challenge operates and advertises itself as a provider of nondenominational nursing home services whose primary source of revenue is from public assistance payments made by various agencies of Federal, State, and local governments. Still further, the charter of Challenge states that there is no legal relationship between that corporation and the Minnesota District Council of the Assemblies of God Church. Finally, the Assemblies of God Church does not have right of approval or the right to remove directors of Challenge, does not support Challenge financially, and cannot legally require Challenge to report on its operations.

Despite this lack of legal connection between the Assemblies of God Church and Challenge, the petitioners contend

that Challenge is under the moral suasion of the Minnesota District Council of the Assemblies of God Church. Petitioners, however, have not shown any objective manifestation of control by the Assemblies of God Church over Challenge. The record is devoid of any evidence that the Assemblies of God Church ever made a suggestion to Challenge about the operation or management of the nursing homes it ran.

The only evidence in the record which supports the petitioners' contention is the assertion of the Reverend L. D. Kramer and Reverend G. E. Doughty, president and executive director, respectively, of Challenge, that they felt they were operating under the unwritten moral discipline and guidance of the Assemblies of God Church. While we do not doubt that most ministers of the gospel would feel that the great majority of their activities were consonant with the broad principles of the denomination to which they belong, this does not establish that the Assemblies of God Church had the desire or ability to exercise any direction or control over Challenge. Consequently, Challenge cannot be said to have operated under the authority of the Assemblies of God Church during the years before the Court.

In conclusion, we find that the above tests indicate that petitioners, although concededly ordained ministers, are not performing the types of services which give rise to an allowance for the home expense under section 107.

*Decisions will be entered for the respondent.*