MAURICE A. AND JACQUELINE MOSLEY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; MAURICE J. AND BILLIE J. MOSLEY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Mosley v. Commissioner
Docket Nos. 20269-92, 20270-92
United States Tax Court
T.C. Memo 1994-457; 1994 Tax Ct. Memo LEXIS 462; 68 T.C.M. (CCH) 708; September 14, 1994, Filed *462 Decision will be entered under Rule 155. Held: Services rendered by husband petitioners, ministers, to organization constituted performance of sacerdotal functions within meaning of secs. 1.107-1(a) and 1.1402(c)-5(b)(2)(ii), Income Tax Regs., such that parsonage rental allowances paid for 1989 and 1990 were excludable from gross income under sec. 107, I.R.C.Held, further, no exclusion for 1987 and 1988 for failure of employer to designate amounts as rental allowances pursuant to official action taken in advance of payment. For petitioners: Frank Sommerville. For respondent: Jaye Andras Caffrey. HALPERN
HALPERN
MEMORANDUM FINDINGS OF FACT AND OPINION HALPERN, Judge: By notice dated June 10, 1992, respondent determined deficiencies in Federal income tax of petitioners Maurice A. and Jacqueline Mosley, docket No. 20269-92 as follows: Year
Deficiency
1987
$ 2,981
1988
3,064
1989
4,709
1990
4,059
By separate notice also dated June 10, 1992, respondent determined deficiencies in Federal income tax of petitioners Maurice J. and Billie J. Mosley, docket No. 20270-92 as follows: Year
Deficiency
1987
$ 4,669
1988
5,424
1989
5,905
1990
5,993
The *463 common issue for decision is whether certain amounts received by petitioners Maurice J. and Maurice A. Mosley may be excluded from gross income under section 107. Section 107 contains the so-called parsonage exclusion. Because these cases involve common questions of law and fact, they have been consolidated for trial, briefing, and opinion. All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated. FINDINGS OF FACT Some facts have been stipulated and are so found. The stipulation of facts filed by the parties and accompanying exhibits are incorporated herein by this reference. All petitioners resided in Plano, Texas, at the time the petitions in their respective cases were filed. Petitioner Maurice J. Mosley is the father of petitioner Maurice A. Mosley. Hereafter, petitioner Maurice J. Mosley will be referred to as Maurice, and petitioner Maurice A. Mosley will be referred to as Marty. Ministers of the Gospel
Maurice and Marty are both ministers of the Gospel. Maurice was ordained to the Gospel ministry in 1958 by Iantha Baptist *464 Church of Iantha, Missouri. From 1966 through 1988, Maurice served as senior pastor at College Heights Baptist Church, Elyria, Ohio (College Heights). In 1973, when Marty was still a teenager, he was licensed to the Gospel ministry by College Heights. Marty attended Liberty Baptist College, Lynchburg, Virginia, and graduated with a degree in communications. Following graduation, Marty returned to College Heights. He was then ordained (having previously been licensed) to the Gospel ministry by College Heights, and employed by College Heights as an associate pastor. His duties included teaching Sunday school, pastoral counseling, and developing a program to communicate the Gospel through television. Priority One International
In 1977, Maurice and Marty traveled to Africa. They videotaped the work and stories of several missionaries. Those videotapes were to be used to launch a missionary television program. College Heights provided the equipment and sponsored the efforts of Maurice and Marty to communicate the missionary story through television. College Heights' efforts were undertaken as part of a project entitled "Priority One International." College Heights commissioned *465 Priority One International as its missionary arm. Maurice believed that God had given him a vision of a ministry to bring national attention to the cause of world missions. Incorporation of Priority One
In 1980, Maurice and Marty moved to separate their activities concerning foreign missions from College Heights. Maurice and Marty did not want to be restricted in their activities to one particular Christian denomination. They believed that their message needed to be shared across denominational lines. Priority One, an Ohio not-for-profit corporation was incorporated. Priority One continued Maurice's and Marty's television-related activities previously sponsored by College Heights. Priority One was organized for the following stated purposes: A. To teach, promulgate and disseminate the gospel of Jesus Christ. B. To appoint and engage persons to actively pursue and accomplish the foregoing. C. To engage in the promulgation of Christian teachings through the formation operation and support of Christian missions and to promulgate, engage in the dissemination and distribution of Christian literature. D. To do and perform any and all acts and things within *466 the scope of the laws of the State of Ohio and the United States, respecting a Corporation organized for religious purposes, educational and charitable purposes.
Move to Texas
Maurice and Marty moved Priority One to Texas in 1981. A Texas not-for-profit corporation, named Priority One, was incorporated on October 12, 1990. [1] The articles of incorporation of Priority One (Texas) state its purpose as follows: "The Corporation is organized and shall be operated exclusively for charitable, religious and educational purposes within the meaning of Section 501(c)(3) of the Code." Bylaws
The bylaws of Priority One (Ohio) provide for, *467 among other officers, a president and vice president. The bylaws provide that, among other duties, the president shall "supervise the affairs of the Corporation and shall attend constantly to the business of the Corporation." The bylaws provide that, among other duties, the vice president shall assist the president in the performance of his duties. Officers of Priority One
During the years at issue, Maurice and Marty were employed as president and vice president, respectively, of Priority One. Neither Maurice nor Marty had a written contract of employment with Priority One. Compensation
At a meeting of the board of directors of Priority One on December 1, 1989, there was a discussion of compensation for employees of Priority One. The following 1989 and proposed 1990 compensation for Maurice and Marty is set forth in the minutes of that board meeting (in the following language): MAURICE J. MOSLEY MARTY MOSLEY
1989 TOTAL - $ 74,646
$ 66,768
(BREAKDOWN)
SALARY -   19,310
45,368
HOUSING ALLOWANCE -   21,400
21,400
RETIREMENT -   33,936
-0- 1990 TOTAL - $ 80,618
$ 72,609
(BREAKDOWN)
SALARY -   25,282
46,009
HOUSING ALLOWANCE -   21,400
21,400
RETIREMENT -   33,936
5,200
*468 Activities of Priority One
From the formation of Priority One in 1980 through 1986, a principal activity of Priority One was the production of a half-hour weekly television special entitled "Missionaries in Action." The corporation would cause to be videotaped stories about foreign missionaries. The weekly specials were broadcast on the Christian Broadcasting Network. Beginning in 1986, Priority One began producing video programs for direct distribution to church congregations, and not for broadcast over the air. In 1989 and 1990, Priority One produced a 5-part video series entitled "Church Leaders Under Fire." The series is aimed at ministers and other persons who work for churches, and addresses common problems, e.g., "burnout" that church workers face. In 1988 and 1989, Priority One produced a 6-part video series entitled "Teens in Crisis Relationships". That series addresses issues faced by teenagers, specifically their relationships with parents, friends, themselves, God, the opposite sex, and the world. One of the tapes in the series discusses the work of foreign missionaries and calls on teenagers to consider missionary work. Other video series produced by Priority *469 One during the years in question include: (1) a 5-part series, "Parenting: An Attitude of the Heart," and (2) a 5-part series, "Marriage: For Lovers Only." Tapes in each of the series focus on the lives and work of foreign missionary families. Operation of Priority One
Marty is primarily responsible for the production of the video programs produced by Priority One. In conjunction with other employees of Priority One, he writes any scripts that are needed. Both he and Maurice occasionally appear in the videos. Both Maurice and Marty select the topics to be covered, and are responsible for the "message" conveyed by the tapes. Maurice, in addition to his other duties as president of Priority One, traveled on behalf of Priority One during the years in issue to meet with missionaries. As president of Priority One, he preached at churches' mission conventions and appeared on Christian television shows. Maurice conducts daily worship services for employees engaged in Priority One's marketing efforts. The services provide an opportunity for Maurice to challenge those employees and emphasize to them the importance of what they are doing and their opportunity to change people's *470 lives. On occasion, the Lord's Supper is administered at those services. Priority One's user list includes over 30,000 churches of various Christian denominations, including 6,800 Baptist churches, 3,000 Lutheran churches, 2,700 Methodist churches, 2,700 Episcopal parishes, 2,500 Presbyterian churches, 1,000 Churches of Christ, 2,500 Roman Catholic parishes, and 10,700 other Christian churches. Priority One distributes its video programs to churches and others for a free 10-day examination period. A recipient desiring to keep any program is expected to pay for it. Gross revenues of Priority One for 1988, 1989, and 1990 were as follows: Year
Gross Revenues
1988
$ 500,000
1989
1,100,000
1990
1,800,000
The number of persons employed by Priority One increased from 6 or 8 in 1987, to 23 or 24 in 1990. Approximately 10 percent of Priority One's total revenues come from unsolicited monetary contributions (gifts). Priority One is an organization exempt from tax under section 501(a) as an organization described in section 501(c)(3). Baptist Denomination
Churches of the Baptist denomination are congregational, and not subject to a legal hierarchy (as, e.g., are *471 Roman Catholic churches). Individual congregations ordain ministers and promulgate tenets of faith and practice. The primary tenet of the faith accepted by Baptist churches is evangelism: The propagation of the Gospel. Sacerdotal functions accepted by Baptist churches include world evangelism, baptizing, administering the Lord's supper, marrying, preaching, teaching, counseling, and praying for others. OPINION I. Introduction
In each of the years in issue, both Maurice and Marty excluded from gross income a portion of the compensation received from their common employer, Priority One, as a rental allowance used by each to rent or provide a home. In certain circumstances, a minister of the Gospel may exclude from gross income a rental allowance paid to him as part of his compensation. See sec. 107. The sole question for decision is whether, on the facts before us, such exclusion is allowable. There is no question as to the use of the excluded compensation in question (to rent or provide a home). We must, however, determine (1) whether the compensation in question was properly designated as a housing allowance and (2) whether such compensation was paid as remuneration *472 for services that are ordinarily the duties of a minister of the Gospel. See sec. 1.107-1(a), Income Tax Regs.
II. Section 107
Section 107 provides: In the case of a minister of the gospel, gross income does not include -- (1) the rental value of a home furnished to him as part of his compensation; or (2) the rental allowance paid to him as part of his compensation, to the extent used by him to rent or provide a home.
In pertinent part, section 1.107-1, Income Tax Regs. provides: Rental value of parsonages. (a) * * * In order to qualify for the exclusion, the home or rental allowance must be provided as remuneration for services which are ordinarily the duties of a minister of the gospel. In general, the rules provided in § 1.1402(c)-5 will be applicable to such determination. Examples of specific services the performance of which will be considered duties of a minister for purposes of section 107 include the performance of sacerdotal functions, the conduct of religious worship, the administration and maintenance of religious organizations and their integral agencies, and the performance of teaching and administrative duties at theological seminaries. *473 * * * (b) * * * The term "rental allowance" means an amount paid to a minister to rent or otherwise provide a home * * * if such amount is designated as rental allowance pursuant to official action taken in advance of such payment by the employing church or other qualified organization * * *. The designation of an amount as rental allowance may be evidenced in an employment contract, in minutes of or in a resolution by a church or other qualified organization or in its budget, or in any other appropriate instrument evidencing such official action. * * *
III. Official Action
To constitute a rental allowance within the meaning of section 107, an amount paid to a minister to rent or otherwise provide a home must be designated as a rental allowance pursuant to official action taken in advance of such payment. Sec. 1.107-1(b), Income Tax Regs. Without such official action, no exclusion is allowable. Boyer v. Commissioner, 69 T.C. 521, 533-534 (1977); Eden v. Commissioner, 41 T.C. 605 (1964); Hoelz v. Commissioner, T.C. Memo. 1981-496; Ling v. Commissioner, 200 F. Supp. 282 (D. Minn. 1961). *474 Petitioners bear the burden of proving that such official action was taken. See Rule 142(a). Apparently, Maurice and Marty were compensated on a calendar-year basis. Petitioners have failed to prove any official action prior to 1989. The minutes of a meeting of the board of directors of Priority One (Ohio) held on December 1, 1989, state Maurice's and Marty's compensation for 1989, and show a "housing allowance" of $ 21,400 for each. We accept those minutes as evidence that such housing allowances were budgeted for 1989. The designation of an amount as a rental allowance in a budget is satisfactory evidence of official action. Sec. 1.107-1(b), Income Tax Regs. We also accept a similar designation for 1990 in such minutes as satisfactory evidence that housing allowances were budgeted for (and official action taken) for 1990. [2]
*475 There is in evidence a document entitled "Unanimous Consent of Directors of Priority One in Lieu of Special Meeting" (Unanimous Consent). The Unanimous Consent is dated July 2, 1991. Among other things, it recites that, because of certain errors and omissions in the taking and preparation of the minutes of the meetings of the board, the board's approvals of the parsonage allowances for Maurice and Marty for, among other years, 1987 and 1988 are not properly reflected in the minutes of the board. There is no explanation of those "certain errors and admissions". We think that the Unanimous Consent is inadequate evidence that adequate steps to constitute official action were taken in advance of payment for 1987 and 1988. Testimony by Marty on this point was contradictory. He testified first that, in 1989, Priority One found out that a designation had to be in the minutes annually and that such action had been taken for every year since. He subsequently testified that it may have been as late as January 1991 when Priority One found out that a designation had to be in the minutes, and started doing so. He could not recall whether accounting records created contemporaneously with *476 his and Maurice's paychecks for 1987 and 1988 reflected a designation for housing allowances. Based on all the evidence, we find that no official action to designate any amount as a rental allowance with regard to either Maurice or Marty was taken by Priority One with respect to any compensation paid either individual for 1987 or 1988. Accordingly, we hold that section 107 is inapplicable to exclude any amount from the gross income of either Maurice or Marty for 1987 or 1988. IV. Services as Minister of the Gospel
A. Respondent's Argument
Respondent argues that the services that Maurice and Marty rendered to Priority One during the years in question were not services that are ordinarily the duties of a minister of the Gospel. Accordingly, respondent argues that, notwithstanding that we might determine that rental allowances were appropriately designated in advance of payment by Priority One, no exclusion is allowable under section 107 for failure of such allowances to be provided as remuneration for services that are ordinarily the duties of a minister of the Gospel. See sec. 1.107-1(a), Income Tax Regs.
B. Section 1.1402(c)-5(b)(2), Income Tax Regs.
Section *477 1.1402(c)-5(b)(2), Income Tax Regs. (section 1.1402(c)-5(b)(2)) is cross-referenced in section 1.107-1(a), Income Tax Regs.Section 1.1402(c)-5(b)(2) lists the kinds of services a minister performs in the exercise of his ministry and provides rules to apply when determining whether particular services meet the criteria of the regulations. The following services are listed: the ministration of sacerdotal functions and the conduct of religious worship, and the control, conduct, and maintenance of religious organizations * * * [which are] under the authority of a religious body constituting a church or church denomination. * * * [Sec. 1.1402(c)-5(b)(2).]
The Court has determined that sections 1.107-1(a) and 1.1402(c)-5(b)(2), Income Tax Regs., provide reasonable interpretations of section 107. Toavs v. Commissioner, 67 T.C. 897, 903 (1977). Therefore, we will follow their guidelines in analyzing Maurice's and Marty's situation. 1. Three Tests
Section 1.1402(c)-5(b)(2) provides three applicable tests for the fact situation that confronts us. Maurice and Marty must meet one before their rental allowances can be considered remuneration *478 for services that are ordinarily the duties of a minister of the Gospel. Maurice and Marty have the burden of proof. Rule 142(a). a. First Test
If a minister, pursuant to an assignment or designation by a religious body constituting his church, performs service for an organization which is neither a religious organization nor operated as an integral agency of a religious organization, all service performed by him, even though such service may not involve the conduct of religious worship or the ministration of sacerdotal functions, is in the exercise of his ministry. * * * [Sec. 1.1402(c)-5(b)(2)(v), Income Tax Regs.]
Maurice and Marty do not concede that Priority One is other than a religious organization. Nevertheless, they argue that they fall under this first exception. Maurice and Marty state that they were "commissioned" by College Heights to serve world evangelism through Priority One. That, they argue, "clearly reflects an assignment", within the meaning of the regulation. We disagree. The activities of Priority One began as a project of College Heights. They were separated, however, and Priority One was incorporated when Maurice and Marty came to conclude *479 that their message needed to be shared across denominational lines. Priority One was moved to Texas in 1981. We see an insufficient connection between College Heights and Maurice's and Marty's activities for Priority One during the years in question to conclude that either Maurice or Marty was under "assignment or designation" to Priority One during that period. b. Second Test
Service performed by a minister in the control, conduct, and maintenance of a religious organization relates to directing, managing, or promoting the activities of such organization. Any religious organization is deemed to be under the authority of a religious body constituting a church or church denomination if it is organized and dedicated to carrying out the tenets and principles of a faith in accordance with either the requirements or sanctions governing the creation of institutions of the faith. The term "religious organization" has the same meaning and application as is given to the term for income tax purposes. [Sec. 1.1402(c)-5(b)(2)(ii).]
If Maurice and Marty are to prevail under the second test they must establish that Priority One was a religious organization under the authority *480 of a church during the years in question. The portion of the regulation cited above defines a qualifying religious organization as an organization that operates under the authority of a church or church denomination. Whether a particular organization is operating under the authority or control of a church or church denomination or is an independent institution can only be determined after reviewing all the facts and circumstances surrounding the relationship between the church denomination and the organization. Toavs v. Commissioner, supra at 904-905. The parties have stipulated that (1) Christianity is a religion, (2) the Southern Baptist Convention is a Baptist denomination of Christianity, (3) Baptists are congregational, (4) Baptist churches are independent, (5) local congregations promulgate the tenets of faith and practice, and (6) Priority One was separated from College Heights because it did not want to be restricted to one particular denomination of the Christian religion. Maurice and Marty concede that "no 'requirements or sanctions' exist for creation of Baptist institutions". Moreover, they have proposed virtually no facts showing *481 how Priority One falls under the authority of either College Heights or any Baptist congregation. Indeed, they propose as a finding that "No church, convention, or association of churches exercises legal or actual control over Priority One". Their proposed finding continues: "however, the users of Priority One's videotapes offer moral, spiritual and prayer support." They argue that, because Priority One is dedicated to carrying out the tenets and principles common to the Baptist denomination, Priority One should be "deemed" under the authority of a church of the Baptist denomination. We disagree. A religious organization is deemed under the authority of a church or church denomination if it is organized and dedicated to carrying out the tenets and principles of a faith in accordance with either the requirements or sanctions governing the creation of institutions of the faith. Maurice and Marty as much as concede that Priority One does not meet that test. The regulation does not provide that a religious organization is deemed under the authority of a church or church body if it is merely dedicated to carrying out the tenets and principles of a denomination. On *482 the record before us, we are unable to find that Priority One was organized and operated under the authority of a religious body constituting a church or church denomination. See Toavs v. Commissioner, supra; sec. 1.1402(c)-5(b)(2). Maurice and Marty have failed to carry their burden of showing that the second test is met. We do not decide whether Priority One is a religious organization within the meaning of the regulations. c. Third Test
If a minister is performing service in the conduct of religious worship or the ministration of sacerdotal functions, such service is in the exercise of his ministry whether or not it is performed for a religious organization. * * * [Sec. 1.1402(c)-5(b)(2)(iii).] Section 1.1402(c)-5(b)(2)(i), further provides: Whether service performed by a minister constitutes the conduct of religious worship or the ministration of sacerdotal functions depends on the tenets and practices of the particular religious body constituting his church or church denomination.
(1) Conduct of Worship Services
Daily worship services are conducted at Priority One. Apparently, they were conducted during the years *483 in question. Maurice conducts those services. They are conducted for employees engaged in Priority One's marketing efforts. On occasion, the Lord's supper is administered at those services. Although Maurice had no contract of employment with Priority One during the years in question, it seems clear that his activity in conducting worship services was known to, and approved by, the board of directors of the corporation. We think that his conduct of those services constitutes the conduct of religious services within the meaning of section 1.1402(c)-5(b)(2)(i). As president of Priority One, Maurice also preached at churches' mission conventions. Clearly, Maurice's preaching and conduct of religious services constituted only a portion of Maurice's duties on behalf of Priority One. We need not decide, however, whether those duties are sufficient to justify exclusion of the rental allowances in question. We need not decide that because we believe that both Maurice's and Marty's principal duties as president and vice president, respectively, of Priority One constituted the performance of sacerdotal functions within the tenets and practices of the Baptist denomination. (2) Performance *484 of Sacerdotal Functions
Dr. Derrel R. Watkins is chairperson, Behavioral Science Division, Southwestern Baptist Theological Seminary, Fort Worth, Texas. Also, he has been ordained to the Baptist ministry. Dr. Watkins was called as an expert witness by Maurice and Marty. His written report was accepted into evidence by the Court. In that report, Dr. Watkins states the following: Baptist congregations recognize that God may call individuals to serve as itinerant ministers. Such ministers may serve congregations both within the denomination and in other denominations. They carry out their sacerdotal functions independent of a specific congregation. Some ministers, with the blessings of the congregation that ordained them, may broaden their ministry to include radio, television, and writing missions. A majority of Baptist congregations consider any ordained minister who seeks to proclaim the Gospel in any fashion to any person or group of persons, or who provides church-related services to congregations, to be functioning as a minister in accordance with the overall purpose of his ordination. Dr. Watkins was of the opinion that, since both Maurice and Marty continue the work *485 undertaken by Priority One International when it was a project of College Heights Baptist Church (College Heights), they continue in the ministry begun by them under the authority of College Heights. Respondent presented no expert testimony of her own. In Colbert v. Commissioner, 61 T.C. 449 (1974), we considered the application of section 107 to a Baptist minister employed by a nonreligious organization. The narrow question we addressed was whether the minister's services rendered by him to his employer were the conduct of religious worship within the meaning of section 107. We found that the employer's purpose and the minister's services fundamentally consisted of the preaching of anticommunism. We found anticommunism not to be a tenet or practice of the Baptist faith. On that basis, we concluded that the minister was not conducting religious worship within the meaning of section 107. We also found that support of foreign missions is one of the tenets of the Baptist faith. We noted that the minister's speeches did in some ways express a legitimate concern of the Baptist church in the plight of missionaries. We found, however, that *486 concern to be secondary, and not the main thrust of the services performed for his employer. In so doing, we implied that, had support of foreign missions been the main thrust of his services, it would have been a sufficient basis to find that his speeches did constitute the conduct of religious worship. Id. at 456. We find that support of foreign missions is the main thrust of the services rendered by Maurice and Marty. Priority One International was a project of College Heights. It grew out of Maurice's and Marty's travels to Africa. Maurice believed that God had given him a vision of a ministry to bring national attention to the cause of world missions. Maurice and Marty accomplished that ministry, first, through Priority One International and, then, through Priority One. We have viewed video tapes made by Priority One that deal with the work of foreign missionaries. Those tapes fulfill Maurice's view of his ministry. Undoubtedly, they bring attention to the cause of world missions and support the work of foreign missionaries. During the years in issue, video series produced by Priority One began to address other issues, in addition to the *487 support of foreign missions. We have sampled those series and find that, still, there was a substantial focus on foreign missions and missionaries. It may be that Priority One has changed its purpose, or the emphasis of its operations, and that Maurice's and Marty's services should no longer be characterized as in support of foreign missions. For the years in question, however, we are satisfied that that was not the case. Together, Maurice and Marty constituted the creative and productive force behind the videos produced by Priority One. Those videos served to support the cause of foreign missions. The main thrust of the services rendered by Maurice and Marty was, thus, in support of foreign missions. On account thereof, and in light of the expert testimony of Dr. Watkins, we find that their services constituted the performance of sacerdotal functions within the tenets and practices of the Baptist faith. See secs. 1.107-1(a), 1.1402(c)-5(b)(2)(ii), Income Tax Regs.
2. Conclusion
Both Maurice and Marty are ordained ministers. For 1989 and 1990, Priority One paid to each of them amounts designated as rental allowances pursuant to official action taken in advance of such *488 payments. Such payments were remuneration for services ordinarily the duties of a minister of the Gospel. Such payments were expended by Maurice and Marty for rent or to provide housing. We hold that such amounts are excludable from gross income under section 107. Decisions will be entered under Rule 155. Footnotes
1. The parties appear to treat the Texas corporation as a continuation of the Ohio corporation, and have not clearly distinguished between them. Where we wish to be specific about one or the other of the corporations we will refer to Priority One (Ohio) or Priority One (Texas), as appropriate. Otherwise, we will follow the lead of the parties and refer only to Priority One.↩
2. Priority One (Texas) was incorporated on Oct. 12, 1990. Priority One (Texas) was determined by respondent to be a tax exempt organization on Mar. 27, 1991. We assume that Priority One (Ohio) continued in operation through at least that date. We thus assume that Priority One (Ohio) paid Maurice's and Marty's salaries through 1990. We do not consider whether the official action taken by Priority One (Ohio) would have sufficed had Priority One (Texas) paid Maurice's and Marty's salaries for Oct.-Dec. 1990.↩